IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UC MARKET, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Defendant. | Case No. 3:24-cv-00845-IM <br><br> **OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Michael A. Cox, 12360 SW Chandler Drive, Tigard, OR 97224. Attorney for Plaintiff.

Ariana N. Garousi and Benjamin T. Hickman, Assistant U.S. Attorneys, and William M. Narus, Acting U.S. Attorney, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff UC Market, LLC, a Portland convenience store, seeks judicial review of the final decision of the Food and Nutrition Service ("FNS") of the United States Department of Agriculture permanently disqualifying UC Market from the Supplemental Nutrition Assistance Program ("SNAP"). Plaintiff concedes that it violated SNAP anti-trafficking regulations but

PAGE 1 – OPINION & ORDER ON SUMMARY JUDGMENT

argues that FNS erred by failing to consider imposing a civil money penalty in lieu of disqualification.

Both Plaintiff and Defendant have moved for summary judgment. ECF 21, 23. Based on the undisputed facts, FNS's decision to disqualify Plaintiff was not arbitrary and capricious. This Court therefore grants Defendant's motion and denies Plaintiff's motion.

## BACKGROUND

### A.  Statutory and Regulatory Background

In 1964, Congress created SNAP to promote the "well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. SNAP benefits are delivered via electronic benefit transfer ("EBT") cards, which may be redeemed for eligible food items at authorized retail food stores. 7 U.S.C. § 2016(h); 7 C.F.R. § 274.3. To participate in SNAP, stores must apply to FNS to become an authorized retailer. 7 C.F.R. § 278.1(a).

Once authorized to accept SNAP benefits, a retailer must comply with several statutory and regulatory requirements. *See* 7 U.S.C. § 2018; 7 C.F.R. §§ 278.1–278.2. Among these requirements, a retail food store may accept SNAP benefits "only in exchange for eligible food." 7 C.F.R. § 278.2(a); *see* 7 C.F.R. § 271.2 (defining eligible food). "Trafficking" in SNAP benefits—exchanging SNAP benefits for "cash or consideration other than eligible food"—is prohibited. 7 U.S.C. § 2024(b); 7 C.F.R. § 271.2. By statute, the penalty for trafficking, even for a first-time offender, is permanent disqualification from the SNAP program. 7 U.S.C. § 2021(b)(3)(B). If "substantial evidence" shows that the store had an effective SNAP compliance program in place prior to the violations, however, FNS may impose a civil money penalty ("CMP") in lieu of permanent disqualification. *Id.*; 7 C.F.R. § 278.6(i).

FNS has defined by regulation the minimum standards a store must meet to be considered for a CMP in lieu of permanent disqualification. The store must establish by substantial evidence

PAGE 2 – OPINION & ORDER ON SUMMARY JUDGMENT

that it fulfills four criteria: (1) development of an "effective compliance policy," (2) evidence that the "compliance policy and program were in operation at the location where the violation(s) occurred *prior* to the occurrence of [the] violations," (3) development of an "effective personnel training program," and (4) evidence that store owners and management were not involved in, and did not benefit from, the trafficking. 7 C.F.R. 278.6(i) (emphasis in original). Even when these standards are satisfied, FNS retains the discretion to impose permanent disqualification rather than a CMP. 7 U.S.C. § 2021(b)(3)(B).

**B. Factual Background**

UC Market is a small convenience store located in Southeast Portland. Declaration of Chunmei Zeng ("Zeng Decl."), ECF 22 ¶ 2. Its owners, Chunmei Zeng and Keneng Su, are a married couple who acquired the business in 2016. *Id.* Zeng works in the store 95 hours per week and Su works 48. *Id.* ¶ 5. Zeng and Su immigrated to the United States in 2007 and 2014, respectively. *Id.* ¶ 2. Neither speaks fluent English. *Id.* They began learning English as a second language in 2009. *Id.*

FNS began investigating UC Market after identifying suspicious patterns of SNAP transactions. These patterns included rapid consecutive transactions, multiple transactions from the same accounts in short time frames, unusually large transactions, many manual transactions (instead of swiping the card), and transactions that depleted most or all of an account's monthly benefits in unusually short time frames. AR 289–92 (filed under seal).

FNS conducted an in-person inspection of UC Market on June 26, 2023, assessing the store's operation, stock, and facilities. AR 285–88. That inspection identified no reason that UC Market would have SNAP redemption patterns different from its similarly sized competitors.

On January 26, 2024, FNS issued a charge letter alleging that UC Market had unlawfully trafficked in SNAP benefits. AR 307–309. The charge letter described the patterns of SNAP

PAGE 3 – OPINION & ORDER ON SUMMARY JUDGMENT

trafficking identified during FNS's investigation and attached lists of irregular EBT transactions supporting each pattern of trafficking. AR 307–308. The letter also stated that "the sanction for trafficking is permanent disqualification," AR 307, but that, "under certain conditions," FNS may impose a CMP in lieu of disqualification, AR 308. To be considered for a CMP, the letter explained that a store "must meet each of the four criteria listed [in Section 278.6(i)] and provide the documentation as specified within 10 calendar days of [the] receipt of this letter." *Id.*

On February 9, 2024, UC Market, acting through its accountants, sought an extension to respond. *See* AR 350; Zeng Decl., ECF 22 ¶ 5. The same day, FNS responded in a letter stating that "the time to request a civil money penalty in lieu of a permanent disqualification and to provide the documentation to support such a request cannot be extended," but that the "time to respond to the letter can be extended." AR 350. The letter granted an extension to March 11, 2024. *Id.*

UC Market responded to the charge letter on February 26, 2024, stating that it initially suspected an error by its credit-card processing company because it could not locate receipts for the transactions identified by FNS. AR 352. UC Market explained that it had identified a recent suspicious transaction that appeared similar to those flagged by FNS and had reviewed its camera system to identify the employee who processed that transaction. *Id.* According to UC Market, this employee, who was hired by the store before the current owners purchased the business, Zeng Decl., ECF 22 ¶ 6, worked shifts that largely overlapped with the suspicious transactions identified by FNS. AR 352. UC Market stated that it had suspended the employee pending further action and asked for guidance from FNS in recovering the misappropriated benefits. *Id.*

In March 2024, FNS issued a determination that UC Market had engaged in unlawful trafficking and ordered permanent disqualification from SNAP as a sanction. AR 355. FNS explained that it had "considered [the store's] eligibility for a trafficking Civil Money Penalty," but that UC Market was not eligible for a CMP because it had "failed to submit sufficient evidence to demonstrate that [it] had established and implemented an effective compliance policy and program to prevent violations" of SNAP regulations. *Id.*

UC Market, acting through a friend, sought further administrative review. AR 363; Zeng Decl., ECF 22 ¶ 5. UC Market again stated that it lacked any knowledge of its now exemployee's actions. AR 370. In April 2024, FNS issued a final agency decision sustaining the permanent disqualification. AR 372–81. That decision found sufficient evidence to support the permanent disqualification. AR 372. That decision also noted that UC Market "did not, at any time, request a CMP" nor submit any documentation to support its eligibility for this penalty, even after the deadline. AR 380. At no point throughout the administrative process does UC Market appear to have been represented by counsel.

## LEGAL STANDARDS

### A. Summary Judgment Standard

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017) (citing Fed. R. Civ. P. 56(a)). When, as here, both parties move for summary judgment, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (internal quotation marks omitted). Either party may defeat summary judgment by

showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

**B. Review of Food Stamp Program Disqualification**

A retailer may seek judicial review of a final FNS decision in the district court "for the district in which it resides or is engaged in business." 7 U.S.C. § 2023(a)(13). When the retailer does not dispute the violation, the court reviews the FNS's sanction under the "arbitrary and capricious standard." *Wong v. United States*, 859 F.2d 129, 132 (9th Cir. 1988). Under this standard, "the court examines 'the sanction imposed by the FNS in light of the administrative record to judge whether the agency properly applied the regulations and to determine whether the sanction is unwarranted in law or without justification in fact.'" *Id.* (alterations omitted) (quoting *Plaid Pantry Stores, Inc. v. United States*, 799 F.2d 560, 563 (9th Cir. 1986) (per curiam)).

## DISCUSSION

Plaintiff concedes that it violated SNAP regulations. Plaintiff's Motion for Summary Judgment ("Pl. Mot."), ECF 21 at 8 ("Plaintiff does not challenge any finding that a wayward employee committed violations of the Food Stamp Act."). Instead, Plaintiff argues that FNS erred in finding that Plaintiff was not eligible for a CMP in lieu of permanent disqualification. *Id.*; *see* AR 380 (finding Plaintiff did not request a CMP). Plaintiff contends that, while it never used the phrase "civil money penalty," its communications with FNS over the course of the case make "clear that Plaintiff was admitting violations and pleading for mercy on the punishment." Pl. Mot., ECF 21 at 8. Plaintiff argues that its lack of any history of violations, its swift termination of the responsible employee, and the EBT signage it maintained in the store are all evidence that would support imposing a CMP in lieu of permanent disqualification. *Id.* at 8–9. More broadly, Plaintiff argues that it would be unjust to impose the sanction of permanent disqualification "simply because [P]laintiff's owners were not sufficiently sophisticated or

PAGE 6 – OPINION & ORDER ON SUMMARY JUDGMENT

wealthy to have the necessary means to put forth the clearest record within a shockingly . . . short 10-day window." Pl. Reply, ECF 25 at 2. The government argues that Plaintiff did not request a CMP and, regardless, the owner's innocence and termination of the responsible employee are not material. Defendant's Motion for Summary Judgment, ECF 23 at 12–14.

Viewing the evidence in the light most favorable to Plaintiff and giving it the benefit of all reasonable inferences, FNS's decision to disqualify UC Market was not arbitrary and capricious. FNS considered all evidence submitted by UC Market and determined that the evidence failed to establish that UC Market met the four minimum criteria to be eligible to be considered for a CMP in lieu of permanent disqualification. *See* 7 C.F.R. § 278.6(i). While this Court is sympathetic to UC Market's circumstances, this Court finds that FNS's decision to permanently disqualify Plaintiff for trafficking is supported by the administrative record. The record shows that Plaintiff failed to submit sufficient evidence to demonstrate that it had an effective SNAP compliance program in place prior to the violations, as FNS found. Because Plaintiff failed to meet this requirement for consideration for a CMP, this Court need not resolve whether Plaintiff requested a CMP or if such a request was timely. This Court will therefore enter summary judgment in favor of Defendants.

The default penalty for trafficking is permanent disqualification. 7 C.F.R. § 278.6(e)(1)(i). A CMP is available only where the "minimum standards of eligibility" are met, 7 C.F.R. § 278.6(i), including "substantial evidence" of an effective compliance program, *id.*; 7 U.S.C. § 2021(b)(3)(B). Even if the criteria are met, a CMP is discretionary. 7 U.S.C. § 2021(b)(3)(B). If the criteria are not met, the statute states that disqualification "shall" be permanent, even for first-time offenders. 7 C.F.R. § 278.6(a).

PAGE 7 – OPINION & ORDER ON SUMMARY JUDGMENT

Here, FNS determined that Plaintiff "failed to submit sufficient evidence to demonstrate that [it] had established and implemented an effective compliance policy and program to prevent [SNAP] violations." AR 355. This finding is supported by the administrative record because UC Market did not submit any supporting documentation showing its compliance policy.[1] Plaintiff did submit letters attributing the violations to a former employee and stating that Plaintiff terminated this employee shortly after FNS notified Plaintiff of the violations. AR 363, 370. Plaintiff also stated that, after this incident, it had "begun diligently checking merchant copies and invoice numbers daily to prevent future incidents." AR 352. But UC Market's actions after the violations do not demonstrate that it had an effective policy and program in place "*prior* to the occurrence of violations," as required to be eligible for a CMP. 7 C.F.R. § 278.6(i) (emphasis in original).

UC Market offers evidence that its owners were not aware of, did not approve of, did not benefit from, and were not involved in the SNAP violations at issue in this case. Zeng Decl., ECF 22 ¶ 5. But an innocent owner is a separate requirement that has no bearing on whether Plaintiff had an effective SNAP compliance program in place prior to the violations.

UC Market next points to "circumstantial evidence of procedures and/or policies to prevent violations," including its lack of any history of prior violations, its swift action to investigate and terminate the employee responsible for the violations, and a posted sign at the

---

[1] Plaintiff presents evidence that it required each of its employees to sign a written acknowledgment stating, "Food Stamp for food and drink with Nutrition facts label item only." Zeng Decl., ECF 22 ¶ 3 & Ex. 1 at 1. But this evidence was never presented to FNS and is not included in the administrative record. At this stage, this Court only judges whether FNS appropriately applied the law "in light of the administrative record." *Wong*, 859 F.2d at 132 (quoting *Plaid Pantry Stores*, 799 F.2d at 563). In any event, this evidence does not appear sufficient to establish that Plaintiff had both an effective compliance policy in place prior to the violations.

PAGE 8 – OPINION & ORDER ON SUMMARY JUDGMENT

store saying it does not accept EBT for lottery, alcohol, or tobacco products. Pl. Mot., ECF 21 at 8–9. But the regulations make clear that it is UC Market's responsibility to "timely submit[] to FNS substantial evidence" demonstrating that it had an effective compliance policy and program in effect at the time of the violations, not FNS's responsibility to scrutinize the record for circumstantial evidence. 7 C.F.R. § 278.6(i). UC Market did not do so. Because of that lack of evidence, FNS was not able to determine whether any of UC Market's policies or programs were sufficient to warrant considering a CMP in lieu of permanent disqualification. Permanent disqualification was thus the only sanction permitted under the law, and the Court cannot find that the sanction was arbitrary and capricious. *See Plaid Pantry Stores*, 799 F.2d at 561; *Thakor v. United States*, 55 F. Supp. 2d 1103, 1111 (D. Nev. 1999) ("The FNS followed the statute as written and cannot, therefore, be said to have acted arbitrarily and capriciously.").

The Court appreciates that permanent disqualification appears to be a harsh sanction in this case. UC Market is a small, family-owned convenience store with no known history of violations. Zeng Decl., ECF 22 ¶¶ 2, 5; AR 379. And UC Market's response to the charge letter—investigating the incident, terminating the responsible employee, and offering to work with FNS to help resolve the issue—is commendable. But permanent disqualification is presumptively mandatory when a retailer is found to have engaged in trafficking,[2] 7 C.F.R. § 278.6(e)(1)(i), and the Ninth Circuit has held that "even innocent owners" who do not know of

---

[2] Civil money penalties in lieu of disqualification are extraordinarily rare. FNS imposed seven trafficking CMPs in fiscal year 2023. *See SNAP Retailer Management Year End Summary FY 2023*, U.S. Dep't of Agric. Food & Nutrition Serv. (archived Feb. 12, 2025), https://perma.cc/5XK2-7F7W (to locate, select "View the live page," then select the "Compliance Activity" tab). The same year, FNS permanently disqualified 922 retailers. *Id.* Other years reflect similar numbers. *See, e.g.*, U.S. Dep't of Agric. Food & Nutrition Serv., Fiscal Year 2018 Year End Summary 10 (2018), https://perma.cc/LW6J-WEUJ (recording 1,555 permanent disqualifications and just three trafficking CMPs in fiscal year 2018).

the actions of their employees may be disqualified permanently for trafficking violations, *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997). While this sanction may seem "harsh and perhaps unfair" in this case, it is the result "commanded" by federal law. *Id.* (referencing 7 U.S.C. § 2021(b)). This Court accordingly must find that the sanction of permanent disqualification was not arbitrary and capricious.

## CONCLUSION

Defendant's Motion for Summary Judgment, ECF 23, is GRANTED. Plaintiff's Motion for Summary Judgment, ECF 21, is DENIED. The Complaint, ECF 1, is DISMISSED with prejudice.

**IT IS SO ORDERED.**

DATED this 28th day of February, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge